UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARYANN TEISMAN,

        Plaintiff,

                                    File No. 1:11-CV-1211

v.

                                      HON. ROBERT HOLMES BELL

UNITED OF OMAHA LIFE INSURANCE
COMPANY and JEDCO, INC.,

        Defendants.

_____/

## **O P I N I O N**

        This matter is before the Court on Plaintiff Maryann Teisman's motion for judgment on the administrative record against Defendant United of Omaha Life Insurance Co. ("United"). (Dkt. No. 28.) United opposes this motion and asks the Court to grant judgment in its favor. (Dkt. No. 31.) On November 14, 2011, Mrs. Teisman brought a four count complaint against United and Jedco, Inc. (Dkt. No. 1.) Plaintiff raised two counts against United: (1) failure to pay life insurance benefits under United Group Policy GLUG-ABA4 (the "General Policy"); and (2) failure to pay life insurance benefits under United Group Policy GVTL-ABA4 (the "Voluntary Policy"). Plaintiff also raised two counts against Jedco: (1) breach of fiduciary duty; and (2) equitable estoppel. On July 18, 2012, Plaintiff filed the present motion for judgment against United. For the reasons that follow, judgment will be granted in favor of United.

**I.**

Jedco hired Plaintiff's husband, Daniel Teisman, on February 6, 2008. (Dkt. No. 1, Compl. ¶ 6.) Beginning September 1, 2008, Mr. Teisman had life insurance coverage under the General Policy. (*Id.* at ¶ 12.) On April 17, 2009, Mr. Teisman was laid off due to lack of work. (*Id.* at ¶ 21.) His layoff notice stated that his life insurance would not terminate, and he continued to be billed for the life insurance premium. (AR 170-75, 785.) He returned to work on May 4, 2009. On May 20, 2009, he was diagnosed with metastatic melanoma. (Dkt. No. 1, Compl. ¶ 23.) During July and August 2009, Mr. Teisman was out on disability. (*Id.* at ¶ 24.) He returned in September, but was gone again from December 2, 2009, until January 4, 2010. (*Id.* at ¶ 30.) During this time, he continued paying his life insurance premiums. (AR 172-87.)

In December, Mr. Teisman completed an enrollment form for life insurance under the Voluntary Policy. (Dkt. No. 1, Compl. ¶ 28.) Mr. Teisman worked from January 4 until January 7, but was then laid off again. (*Id.* at ¶ 31.) On January 27, Jedco wrote to Mr. Teisman indicating that he had missed a few health insurance premiums. (AR 677.) The letter implied that Jedco had paid them and he could pay it back at his convenience: "Please be aware that you do not need to make the payment in full – feel free to make payments that are comfortable for you." (*Id.*) Mr. Teisman paid Jedco $200 toward the insurance premiums in both February and March. (*Id.* at 675-76, 886.) He returned to work on May 3, 2010, but was off work from May 20 until June 7, while doctors evaluated his response

to Decadron. (Dkt. No. 29, at 6.) On June 11, Mr. Teisman became disabled and was scheduled to be off work until August 1. (*Id.*) He passed away due to medical complications on July 17, 2010. (Dkt. No. 1, Compl. ¶ 38.)

On July 23, Mrs. Teisman applied for benefits. (AR 962-66.) On April 25, 2011, United denied her application. (*Id.* at 874.) Upon review of her administrative appeal, United affirmed the decision to deny benefits. (*Id.* at 136.)

## II.

The General Policy and the Voluntary Policy are parts of employee welfare benefit plans that are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. In an action challenging the denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), a plan administrator's decision is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan contains a clear grant of discretion to the administrator to determine benefits or interpret the plan, the plan administrator's decision to deny benefits is reviewed under the highly deferential arbitrary and capricious standard of review. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000).

## III.

These policies do not give discretion to United to construe the terms of the plan, at

least as such terms regard the "Layoff or Leave of Absence" and "Reinstatement of Employee Insurance" provisions at issue.  Thus, the denial of benefits to Plaintiff on these grounds will be reviewed *de novo*.  Plaintiff raises three arguments as to why United's decision to deny benefits was contrary to the terms of the plans: (1) Mr. Teisman became covered under the Voluntary Policy on January 4, 2010; (2) under either plan, Mr. Teisman was not required to satisfy a 90-day waiting period after May 3, 3010, because his coverage never terminated; and (3) even if Mr. Teisman's coverage ended on January 31, 2010, the plan was reinstated on May 3, 2010.

### A. Eligibility under the Voluntary Policy

Plaintiff's first argument is that Mr. Teisman became covered under the Voluntary Policy on January 4, 2010, the day he returned to active employment.  United has conceded this issue in its response brief:

> In the course of reviewing the record pertinent to preparation of this response, United has concluded that ineligibility for insurance is not a basis for denial of plaintiff's Voluntary Policy claim in this case.  United therefore rests with the other bases for denial as set forth . . . above.

(Dkt. No. 31, Resp. 15.)  Therefore, the Court concludes that Mr. Teisman was eligible for coverage under the Voluntary Policy.  There is no dispute that Mr. Teisman was also eligible for coverage under the General Policy.  However, Plaintiff is only entitled to benefits under these two plans if Mr. Teisman's coverage did not terminate before his death or, if it did terminate, if the coverage was reinstated before his death.

**B. Termination**

United has taken the position that because Mr. Teisman was laid off on January 7, 2010, his insurance ended on January 31, 2010. (AR 143.) Plaintiff contends that Mr. Teisman's coverage continued until he returned to active employment in May 2010.

The plans provide for the termination of coverage in any of the following circumstances:

**When Employee Insurance Ends**

Insurance will end on the earliest of the day:

. . .

(b)     You are no longer actively employed. . . .

(AR 27, 92.) Both parties agree that because Mr. Teisman was laid off on January 7, he was no longer actively employed within the meaning of section (b). (Dkt. No. 29, at 12; Dkt. No. 31, at 8.) However, exceptions are provided to this termination of coverage, and the meaning of one of those exceptions is at the center of the dispute. "If you are no longer Actively Employed, You may be eligible to continue insurance under one of the following continuation options." (AR 27, 92.) The pertinent exception is the "Layoff or Leave of Absence" exception:

**Layoff or Leave of Absence**

You may be able to continue life and accidental death and dismemberment insurance under this provision until the last day of the month in which You are no longer Actively Employed in the event of an involuntary layoff or personal leave of absence approved by the Policyholder.

5

Under this provision, insurance will continue subject to the following conditions:

(a)    We must continue to receive uninterrupted premium payment. . . .

(AR 28.)  United contends that the phrase "the last day of the month in which You are no longer Actively Employed" means Mr. Teisman's insurance terminated January 31.  Plaintiff contends that this phrase is ambiguous because it could refer to *any* of the months Mr. Teisman was no longer actively employed.  Under her interpretation, because Mr. Teisman returned to work in May, the phrase should mean Mr. Teisman's insurance continued until May 31 (i.e. the last day of the *last* month in which he was not actively employed).

This phrase is not ambiguous.  Plaintiff's interpretation requires reading in an extra "last" so that it reads "until the last day of the *last* month in which You are no longer Actively Employed."  This is not the natural reading of the phrase, which plainly refers to the last day of the month employment ended.  Under Plaintiff's interpretation, the coverage would never terminate, continuing indefinitely until the insured is rehired or finds different work, or, if neither of those alternatives happens, for the rest of the insured's life.  Also, the phrase "the month" is specifically limited by the description that it is the month "*in which* You are *no longer* Actively Employed."  "No longer" suggests that within "the month" in question active employment existed but then ended, a condition only January meets.  This conclusion comes from interpreting the phrase, "the month," in context, and does not require reading in additional language despite Plaintiff's objection (*see* Dkt. No. 32, at 2).

6

Therefore, "the month" plainly refers to January in Mr. Teisman's case.

However, "ERISA plans, like contracts, are to be construed as a whole." *Alexander v. Primerica Holding, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992). Thus, the Court must determine whether reading the exception to mean that coverage ended January 31 for Mr. Teisman fits in with other provisions of the plans and/or makes these other provisions superfluous.

First, Plaintiff highlights the fact that one of the conditions for the exception to apply is that premium payments must be continued uninterrupted. (AR 28, 93.) Because premium payments are due on the first day of each month, Plaintiff argues that this condition would be meaningless if coverage only extended to the end of the month in which an employee is terminated. However, this argument ignores the grace period provisions of the plans, which extend the possibility of a timely payment 31 days. (AR 3, 61.) Because of this grace period, the condition that premium payment must continue is not rendered superfluous by interpreting the exception to only extend coverage to the end of January for Mr. Teisman.

This necessary conclusion does not change because of the fact that the Voluntary Policy began on January 1, 2010, and the grace period only exists "[a]fter the first premium has been paid." (Dkt. No. 32, at 2 (quoting AR 61).) Plan provisions are written to apply generally to *all* situations. Plaintiff is correct that there was no grace period for Mr. Teisman under the Voluntary Policy in *this* case because he was terminated in the first month of the plan. But that does not mean that the existence of the grace period fails to save the applicability of the premium payment condition. The condition still has applicability because

in every month except the first month of the plan, the grace period allows premium payments to be made *after* termination, meaning that "[w]e must continue to receive uninterrupted premium payment" still has force under the plain reading of the exception.

Second, Plaintiff points to a "note" that only exists in the Voluntary Policy.  This note appears directly under the "Layoff or Leave of Absence" exception: "If you have any Injury or Sickness during an involuntary layoff or approved leave of absence, insurance under this provision will not be extended past the last day of the month from the day Your layoff or leave of absence began."  (AR 93.)   Because this phrase restricts the continuation of life insurance, when an employee becomes sick or injured during a layoff, to the last day of the month the layoff occurred, Plaintiff argues that the natural implication is that the right to continue life insurance extends beyond the last day of the month in which the layoff began in the absence of such sickness or injury.  Otherwise, Plaintiff contends, the "note" would have no meaning.

However, the "note" is not superfluous under the plain interpretation of the continuation exception.  The note merely clarifies that even if an injury or sickness occurs during a layoff or leave of absence, the end of the month in which the layoff occurred is still the end of the continuation of coverage.  While Plaintiff argues that such a clarification is unnecessary and/or redundant given that the continuation would always end at that time under United's interpretation of the exception, this clarification *is necessary* because the Voluntary Policy was crafted almost identical to the General Policy, and the General Policy

8

contains an explicit caveat for injury/sickness.  As Plaintiff herself argues, the language in the General Policy must be construed consistently with that in the Voluntary Policy.  (Dkt. No. 32, at 5.)  While the Voluntary Policy is clear that the application of the continuation exception is subject to the condition in section (b) that "the layoff or leave of absence is not due to Injury of Sickness" (AR 93), the General Policy provides in its parallel section (b) that "the Policyholder may be able to continue Your life and accidental death and dismemberment insurance for up to 12 months if you are no longer Actively Employed due to Injury or Sickness."  (AR 28.)  Thus, the note is properly interpreted as clarifying that the 12 month continuation in the General Policy not only is inapplicable in the Voluntary Policy if the layoff is due to injury or sickness (as section (b) states), but is also inapplicable if injury or sickness occurs *during* the layoff.

Third, Plaintiff argues that the Court should consider the behavior of the plans' sponsor, Jedco, in interpreting the continuation exception.  Jedco provided Mr. Teisman with a layoff notice on April 16, 2009, stating that his life insurance would not be terminated.  Moreover, United billed Mr. Teisman for his full premiums in May 2009, despite him not returning to work until May 4.  Under United's interpretation of the continuation exception, Mr. Teisman was not covered by life insurance May 1-3, and thus billing him for the whole month of May was inconsistent with that interpretation.  Similarly, Mr. Teisman was billed for his premiums during his layoff beginning in January 2010.

United counters that it relies on the plan sponsor for information about the status of

an insured.  It argues that inaccurate or incomplete information does not relieve anyone from policy provisions.  The "Summary Plan Description" for both plans does provide that "[b]enefits under the Policy are guaranteed *to the extent all Policy provisions are met* and subject to *all terms and conditions* of the Policy."  (AR 53, 124 (emphasis added).)[1]  Thus, the fact that premiums were paid and Jedco made alleged misrepresentations has no effect on whether Mr. Teisman's coverage terminated at the end of January.[2]

Thus, the Court concludes that Mr. Teisman's life insurance coverage terminated January 31, 2010, pursuant to a natural reading of the continuation exception.

**C. Reinstatement**

Last, Plaintiff argues that even if Mr. Teisman's coverage terminated at the end of January, it was reinstated when he returned to work in May.  The plans provide for reinstatement:

> **<u>Reinstatement of Employee Insurance</u>**
>
> An Employee may be eligible to reinstate insurance that has ended. A written request for reinstatement must be submitted to Us. The reinstated insurance will take effect on the date We approve the Employee's written request, provided the Employee is Actively Employed on the date the increase would take effect.

---

[1] Plaintiff has conceded that this "Summary Plan Description" is part of the policy and not a "summary plan description," a term for an ERISA document which summarizes the plan but does not constitute the terms of the plan.  (Dkt. No. 29, at 4.)

[2] Plaintiff may be able to recover the premiums that should not have been paid.  United has conceded this point.  (*See* AR 904.)  Additionally Plaintiff may have a claim against Jedco for the alleged misrepresentations.

The following reinstatement options are available and are each subject to the conditions described in the following paragraphs:

> (a) Non-Payment of Premium;

> (b) Involuntary Reduction in Hours; and

> (c) Rehired Employee.

(AR 26, 91.)  The parties dispute whether active employment ended in this case due to an involuntary reduction of hours or the termination of employment.  This distinction matters because an employee's insurance is reinstated without a waiting period when the employee returns to work under section (b), but is not reinstated without a waiting period under section (c) unless the employee returns to work within 90 days from the date employment ended.[3] (AR 27, 92.)  Mr. Teisman returned to work on May 3, 2010, more than 90 days after his layoff in January 2010.

The definition of "Active Employment" settles the dispute.  Active Employment means "Actively Working on a regular and consistent basis for the Policyholder *32 or more hours each week.*"  (AR 22 (emphasis added).)  Because a certain number of hours is needed for active employment, the natural reading of section (b)'s "Involuntary Reduction of Hours" is that the triggering event is an employee becoming "no longer Actively Employed" because

---

[3]Plaintiff argues in a footnote that the plan is silent as to what happens if an employee is rehired more than 90 days later.  (Dkt. No. 32, at 7 n.2.)  The clear negative implication of stating that "the Employee's insurance may be reinstated without satisfying another Eligibility Waiting Period if the Employee is rehired and becomes Actively Employed within 90 days" is that the aforementioned eligibility waiting period must be satisfied if an employee is not rehired within 90 days.

11

he is no longer working full-time (i.e. he works less than the required 32 hours a week for benefits).[4] For section (c), the triggering event is an employee becoming "no longer Actively Employed" because he is no longer working at all. While Plaintiff is correct that there may be a difference between a discharge and a layoff (Dkt. No. 29, at 17), that potential difference does not matter because section (c) applies to all instances of an employee no longer working, whether it is because of a temporary lay-off or a more-permanent discharge. Indeed, the applicability of section (c) to layoffs is particularly fitting because it concerns reinstatement of insurance *after rehiring*; generally, rehiring occurs with employees previously laid off as opposed to those permanently discharged. Additionally, the fact that Mr. Teisman did not have to fill out a W-4, receive an orientation checklist, or sign authorization forms (Dkt. No. 29, at 18) does not change this analysis because section (c) does not apply to new hires who would have to do those tasks.

Thus, section (c) applies. Under that "Rehired Employee" section, the 90-days-of-continuous-employment waiting period (AR 12, 23) has to be satisfied for reinstatement of insurance unless the employee was rehired within 90 days. Mr. Teisman was not rehired within 90 days of January 7. Consequently, Mr. Teisman was required to satisfy the waiting period for reinstatement of his insurance, which he failed to do. He was rehired on May 3,

---

[4]While it is true that one can read the term "reduction" to encompass a reduction of something to zero (Dkt. No. 32, at 7-8), that is not the best reading of the term in this case because context matters. If someone is laid off, he is not said to be working reduced hours. Instead, he is said to be out of work or not working, which in this case means section (c) applies more naturally than section (b) which applies to part-time workers.

12

2010, but stopped work on June 10, 2010, due to a disability, and then died on July 17, 2010.

Because his coverage was not in effect on the day he last worked or on the day of his death,

Plaintiff is ineligible to receive benefits.

**IV.**

While poorly worded and inarticulately drafted in places, the General Policy and

Voluntary Policy are not ambiguous.  The plain interpretation of the phrase "the last day of

the month in which You are no longer Actively Employed" is that it refers to the last day of

the month an employee is laid off.  Thus, Mr. Teisman's insurance coverage terminated on

January 31, 2010, the end of the month in which he was laid off.  Because Mr. Teisman lost

"active employment" due to the lay off, rather than due to working part-time, his insurance

coverage could not be reinstated upon his return to active employment unless he (a) was

rehired within 90 days or (b) satisfied the 90 days of continuous work waiting period.

Because neither alternative was satisfied, Mr. Teisman's insurance was not reinstated.

As a result, Plaintiff is not entitled to benefits.  Judgment will be granted in favor of

United on the administrative record.  Additionally, Counts I and II of Plaintiff's complaint

will be dismissed.

An order will be entered consistent with this opinion.

Dated: October 29, 2012                          /s/ Robert Holmes Bell
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE