UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARYANN TEISMAN,

        Plaintiff,

                                     File No. 1:11-CV-1211

v.

                                     HON. ROBERT HOLMES BELL

UNITED OF OMAHA LIFE INSURANCE
COMPANY and JEDCO, INC.,

        Defendants.

_____/

## O P I N I O N

    This matter is before the Court on Defendant Jedco, Inc.'s motion for summary judgment.  On November 14, 2011, Plaintiff Maryann Teisman brought a four count complaint against United of Omaha Life Insurance Company and Jedco.  (Dkt. No. 1.) Plaintiff raised two counts against United: (1) failure to pay life insurance benefits under United Group Policy GLUG-ABA4 (the "General Policy"); and (2) failure to pay life insurance benefits under United Group Policy GVTL-ABA4 (the "Voluntary Policy"). Plaintiff also raised two counts against Jedco: (1) breach of fiduciary duty; and (2) equitable estoppel.  On October 29, 2012, this Court denied Plaintiff's motion for judgment against United, granted judgment in favor of United, and dismissed Counts I and II of Plaintiff's complaint.  (Dkt. Nos. 43, 44.)  Jedco filed the present motion for summary judgment on September 18, 2012.  For the reasons that follow, this motion will be granted only as to allegations regarding summary plan descriptions.

## I.

Jedco hired Plaintiff's husband, Daniel Teisman, on February 6, 2008.  (Dkt. No. 11, Answer ¶ 6.)  Jedco provided a benefit package, which included the General Policy, for eligible employees including Mr. Teisman.  (*Id.* at ¶¶ 7-8.)  Jedco was the plan sponsor and plan administrator of the General Policy.  (*Id.* at ¶¶ 10, 11.)  On April 17, 2009, Mr. Teisman was laid off due to lack of work.  (*Id.* at ¶ 21.)  His layoff notice stated that "[t]he benefits listed below will terminate on the dates noted: . . . Life Insurance: n/a."  (AR 785.)  Mr. Teisman continued to be billed for the life insurance premium, which Jedco paid.  (AR 170-75, 785.)  He returned to work on May 4, 2009.  According to a Short-Term Disability Claim Form, Mr. Teisman was diagnosed with metastatic melanoma on May 20, 2009.  (Dkt. No. 38, Attach. 19.)  During July and August 2009, Mr. Teisman was out on disability.  (Dkt. No. 11, Answer ¶ 24.)  Jedco continued paying his life insurance premiums.  (*Id.* at ¶ 25.)  He returned in September, but was out again from December 2, 2009, until January 4, 2010.  (Dkt. No. 35, Attach. 3, Dalrymple Dep. 77-78.)  During all of this time, either he or Jedco paid each of his life insurance premiums.  (*Id.*; AR 172-87.)

In December 2009, Mr. Teisman completed an enrollment form for life insurance under the Voluntary Policy.  (Dkt. No. 11, Answer ¶ 28.)  As with the General Policy, Jedco was the plan sponsor and plan administrator.  (*Id.* at ¶¶ 10, 11.)  Mr. Teisman worked from January 4, 2010, until January 7, 2010, but was then laid off again.  (*Id.* at ¶ 31.)  On January 27, 2010, Jedco's human resources manager, Sara Dalrymple, wrote to Mr. Teisman

indicating that he had missed a few life insurance premiums.  (AR 677.)  The letter stated:

"Please be aware that you do not need to make the payment in full – feel free to make

payments that are comfortable for you." (*Id.*)  Also, Ms. Dalrymple had discussions with Mr.

Teisman during this time frame about him needing to keep paying his insurance premiums,

including his life insurance premiums.  (Dkt. No. 35, Attach. 3, Dalrymple Dep. 80-81.)  She

told him that if he could not make every payment Jedco would pay the premiums and then

deduct his part of those payments from his paycheck when he returned to work.  (*Id.*)  Mr.

Teisman paid Jedco $200 toward the insurance premiums in both February and March.  (AR

675-76, 886.)  He returned to work on May 3, 2010, but was off work from May 20 until

June 7.  (Dkt. No. 35, Attach. 3, Dalrymple Dep. 83-84.)  On June 11, Mr. Teisman became

disabled and was scheduled to be off work until August 1.  (*Id.* at 84.)  He passed away on

July 17, 2010.  (Dkt. No. 11, Answer ¶ 38.)

On July 23, Mrs. Teisman applied for benefits.  (AR 962-66.)  With the assistance of

Jedco, in particular Ms. Dalrymple, Mrs. Teisman completed a proof of death form for each

policy, which Jedco submitted to United.  (Dkt. No. 11, Answer ¶ 40.)  On April 25, 2011,

United denied her application.  (*Id.* ¶ 41.)  Upon review of her administrative appeal, United

affirmed the decision to deny benefits because Mr. Teisman's insurance coverage had

terminated when he was laid off and he had not satisfied the 90-day waiting period required

for the reinstatement of benefits after an employee was rehired.  (*Id.* at ¶ 43.)  Mr. Teisman

had never enrolled in one of the alternative options available to him when he was laid off –

conversion, portability, or living benefits.  (Dkt. No. 34, Br. in Supp. 19; Dkt. No. 35, Resp. Br.16-17.)

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).  Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## III.

The General Policy and the Voluntary Policy are employee welfare benefit plans that

4

are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  ERISA authorizes a beneficiary to bring an action "to obtain other appropriate equitable relief (i) to redress such violations [of ERISA]."   29 U.S.C. § 1132(a)(3)(B).

## A. Is Monetary Relief Available Under § 1132(a)(3)?

As a preliminary matter, Plaintiff is requesting a construction of § 1132(a)(3) which would allow monetary damages.  (Dkt. No. 35, at 7.)  However, Plaintiff relies on the same arguments the Supreme Court found unpersuasive in *Mertens v. Hewitt Associates*, 508 U.S. 248, 255-58 (1993).  In *Mertens*, the Supreme Court held that interpreting "equitable relief" to mean "whatever relief a common-law court of equity could provide in such a case" would "limit the relief *not at all*" and "render the modifier superfluous."  *Id.* at 257-58.  Thus, the Supreme Court interpreted "equitable relief" as referring to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Id.* at 256.

Plaintiff contends that this holding in *Mertens* requires a case by case interpretation of what constitutes appropriate equitable relief.  (Dkt. No. 35, at 8.)  However, the Supreme Court did not limit its holding this way.  It would be nonsensical for the Supreme Court to interpret a provision of a statute one way in certain cases and then a different way in other cases, and the Court did not do so here.  The Supreme Court did find that *both* interpretations of "equitable relief" – (a) the typical equitable remedies and (b) whatever relief a court of

equity was empowered to provide – were possible given the history of courts of equity. *Mertens*, 508 U.S. at 256-57.  However, the Supreme Court found that "in the context of the present statute . . . there can be no doubt" which meaning was intended.  *Id.* at 257.  Thus, the Court held that the "equitable relief" listed in § 502(a)(3) referred only to the typical equitable remedies.

However, this holding does not mean that compensatory damages may never be sought. "[T]he fact that this relief [ordering the payment of benefits owed under the plan as reformed] takes the form of a money payment does not remove it from the category of traditionally equitable relief."  *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011).  In *Cigna*, the Supreme Court limited *Mertens* on the ground that *Mertens* involved a suit against a non-fiduciary:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable." The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference.

*Id.*  Thus, when a fiduciary is involved, compensatory relief is a "typical equitable remedy" available under § 1132(a)(3).

Jedco argues that this language is dicta and is not binding. (Dkt. No. 34, at 15.)  It is correct in that respect.  As Justice Antonin Scalia pointed out in his concurrence, "[t]he

Court's discussion of relief available under [§ 1132(a)(3)] is purely dicta, binding upon neither us nor the District Court." *Cigna*, 131 S. Ct. at 1884 (Scalia, J., concurring). However, while this Court is not bound to follow such dicta, it is the best predictor of how the Supreme Court would rule if directly presented with the issue. As the Fourth Circuit held, in interpreting *Cigna* in a case factually similar to the present one, "[e]ven assuming for the sake of argument that it is [dicta], we cannot simply override a legal pronouncement endorsed just last year by a majority of the Supreme Court." *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 181 n.2 (4th Cir. 2012). *See also Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) (holding that the court "is bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"). Consequently, the Court finds that § 1132(a)(3) authorizes the "make-whole" equitable relief sought by Plaintiff because Jedco is a fiduciary.

**B. Count III: Breach of Fiduciary Duty**

The complaint alleges two breaches of fiduciary duty: (1) Jedco's failure to provide a Summary Plan Description; and (2) Jedco's material misrepresentations that Mr. Teisman's insurance coverage was in effect during his layoffs. (Dkt. No. 1, at ¶¶ 83-84.) Summary judgment is warranted as to the former but not the latter.

**1. Failure to Provide a Summary Plan Description**

ERISA requires a plan administrator to "cause to be furnished" to each participant a summary plan description which must include the name and address of the person designated

as the agent for legal service of process, the name and address of the administrator, the plan's eligibility requirements, the circumstances which may result in a loss of benefits, and other similar information.  29 U.S.C. §§ 1021(a)(1) and 1022(b).  The parties agree that portions of the plan documents,[1] (Dkt. No. 1, Ex. B, at 35-39; Dkt. No. 2, Ex. D, at 44-47), satisfy these requirements.  (Dkt. No. 35, at 17.)  However, Plaintiff contends that because these portions are part of the plan documents they cannot also constitute the summary plan description.  Thus, Plaintiff concludes that Jedco failed to provide a summary plan description and thus breached its fiduciary duty.  (*Id.*)

This conclusion is incorrect.  It is plain that these portions of the plan documents constitute summary plan descriptions.  Both are entitled "Summary Plan Description."  (Dkt. No. 1, Ex. B, at 35; Dkt. No. 2, Ex. D, at 44.)  Plaintiff has no support for the argument that the summary plan description must be separate from the plan documents and cannot be included with them.  It is true that the Supreme Court has held that summary plan descriptions do not themselves constitute the terms of a plan.  *See Cigna*, 131 S. Ct. at 1878.  This was to ensure that the plan administrator was not given the power to set plan terms indirectly because that power is reserved to the plan sponsor.  *Id.* at 1877.  Here, as in *Cigna*, the same entity is the plan sponsor and the plan administrator.  The Court sees no reason why, in such situations, a portion of the plan document cannot constitute the summary plan description.

---

[1]"Plan documents" refer to the pages in the two cited exhibits which begin with the page entitled "Certificate of Insurance" and continue to the end of each cited exhibit.

8

However, Plaintiff argues that even if those portions constituted summary plan descriptions, Jedco still breached its fiduciary duty because no portions of the plan documents were provided to employees. (Dkt. No. 35, at 18.)  Instead, employees were provided with brief summaries of the plans. (*See* Dkt. No. 35, Attach. 3, Dalrymple Dep. 43, 95-96 (referring to Dkt. No. 36, Attach. 10; Dkt. No. 39, Attach. 25, at 1-6).)   Kurt Swardenski, an insurance agent who works for Jedco and puts together the employee benefit packages, testified that he never provided employees with the plan documents. (Dkt. No. 35, Attach. 2, Swardenski Dep. 6-8, 16-22.)  He testified that it was Jedco's responsibility to provide a summary plan description to its employees. (*Id.* at 30-33.) Ms. Dalrymple testified that she did not know if any portion of the plan documents were provided to employees, although she knew the plan documents had not been provided in full. (Dkt. No. 35, Attach. 3, Dalrymple Dep. 50.)  Plaintiff herself testified that she did not know whether or not Mr. Teisman received a summary plan description. (Dkt. No. 35, Attach. 1, Teisman Dep. 27-28.) Because of this testimony, the Court concludes that there is a genuine issue of material fact as to whether Jedco provided a summary plan description to Mr. Teisman.

Nevertheless, "a mere failure to comply with ERISA requirements will not support the recovery of money damages for a breach of fiduciary duty." *Cmty. Ins. Co. v. Ohayon*, 73 F. Supp. 2d 862, 868-69 (N.D. Ohio 1999) (citing *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1009 (6th Cir. 1993) (per curiam)).  *See also  Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989) ("The failure to comply with ERISA's

procedural requirements is not ordinarily a basis for substantive relief.")  "Nothing in § 1132 suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information."  *Id.  See also, e.g.*, *Jordon v. Fed. Exp. Corp.*, 116 F.3d 1005, 1018 (3d Cir. 1997) ("[Plaintiff] presents a claim for damages based on the plans' failure to provide [plaintiff] with a Summary Plan Description pursuant to ERISA sections 102(a)(1) and 104(b)(1). This ERISA statutory claim is not cognizable under [§ 1132(a)(3)].").

   "Most courts that have considered the issue [of whether ERISA authorizes a substantive damages remedy for violation of ERISA's reporting and disclosure mechanisms] have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted."  *Lewandowski*, 986 F.2d at 1009 (quoting *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739 (7th Cir. 1991)).  *See also Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1520 (8th Cir. 1988) ("To secure relief on the basis of a faulty summary plan description, the claimant must show some significant reliance on, or possible prejudice flowing from the summary.").

   Thus, assuming that Jedco did not provide the summary plan descriptions and even assuming that there is a cognizable basis for monetary relief in the Sixth Circuit for this failure, Plaintiff has not provided any evidence of bad faith, active concealment, or prejudice. *See Lewandowski*, 986 F.2d at 1009.  Indeed, Mr. Teisman could not have been prejudiced

because he did not rely on a faulty plan summary.  Instead he relied on misrepresentations by Jedco and any resulting prejudice stemmed from those misrepresentations and not the fact that a summary plan description was not provided.  Indeed, the summary plan descriptions at issue did *not* include information regarding the conversion option, portability option, living benefits option, or the 90-day eligibility waiting period following rehiring, meaning that the provision of those documents would have made no difference to Mr. Teisman's decision to not enroll in any of the alternative options.  (Dkt. No. 1, Ex. B, at 35-39; Dkt. No. 2, Ex. D, at 44-47.)[2]

Plaintiff's argument that a summary plan description would *have to* include this information because each option is a "participant's right under the plan" is unconvincing. (Dkt. No. 35, at 20.)  The alternative options were not ERISA "rights" but instead optional provisions of the plan.  As for the 90-day waiting period following the rehiring of a terminated employee, it was a conditional provision only triggered under specific circumstances.  It would be nonsensical and redundant to require a summary plan description to contain every provision of a life insurance plan, especially the optional and conditional ones.  Indeed, § 1022(b) does not list plan provisions as required information, nor does it mention such optional provisions as conversion, portability, or living benefits in particular.

---

[2]Plaintiff also argues that Jedco violated state law by not delivering an individual certificate informing an employee covered under a group life insurance policy that the employee would be entitled to obtain a conversion policy within 31 days after termination of employment. Mich. Comp. Laws § 500.4438.  Even assuming this statute was not preempted by ERISA, Jedco, to the extent it is even covered by the statute as opposed to United, did provide notice of the right to a conversion policy.  (Dkt. No. 40, Attach. 32; Dkt. No. 39, Attach. 25.)

"It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998) (finding that General Motors was not required to disclose in its summary plan descriptions the fact that the plan was subject to amendment or termination). Moreover, this argument contradicts Plaintiff's earlier argument that the portions of the plan documents being discussed "contain[ed] the information required for a summary plan description." (Dkt. No. 35, at 17.) Thus, the Court concludes that a summary plan description would not need to include the conversion, portability, or living benefits options, or information on the 90-day waiting period following the rehiring of a terminated employee.

Consequently, no reasonable jury could find that Mr. Teisman was prejudiced by a failure to provide the summary plan descriptions, which did not include such provisions. Jedco is entitled to summary judgment on this claim.

### 2. Misrepresentation

Under § 1132(a)(3), a beneficiary may bring a claim against an ERISA plan fiduciary when that person misleads the participant. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir. 2006); *Krohn v. Huron Mem. Hosp'l*, 173 F.3d 542, 547 (6th Cir. 1999). ERISA defines fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or

12

discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). *Moore* defines the claim requirements for an action against an ERISA plan fiduciary:

> To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show:
>
> (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations;
>
> (2) that these [representations] constituted material misrepresentations; and
>
> (3) that the plaintiff relied on those misrepresentations to [his] detriment.

*Moore*, 458 F.3d at 433. Jedco does not dispute that, as plan administrator, it was a fiduciary (as was its representative, Ms. Dalrymple). Thus, the focus will be on the second and third requirements.

### i. Material

"[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision . . . ." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). "A fiduciary must give complete and accurate information in response to participants' questions." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992). "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent

13

of benefits under a plan) will support a claim for breach of fiduciary duty." *Id.*  A fiduciary breaches his duty by providing plan participants with materially misleading information, "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Krohn*, 173 F.3d at 547.

Plaintiff contends that Ms. Dalrymple misrepresented to Mr. Teisman that his life insurance coverage was in effect during the periods he was laid off.  This happened through written representations in April of 2009, and again in January of 2010.  (Dkt. No. 38, Attachs. 17, 18.)  Additionally, there was a conversation between Ms. Dalrymple and Mr. Teisman regarding his life insurance after he was laid off in January of 2010:

> Q. Okay. And during that period of time there was some discussions going on with you and Dan about insurance. Is that a fair --
>
> A. During his layoff?
>
> Q. Yes.
>
> A. Yes.
>
> Q. What was the nature of those discussions?
>
> A. I instructed Dan when he was off on layoff that he needed to continue to pay for his insurance premiums. I sent him a letter with the amounts.
>
> Q. Right.
>
> Q. If we look at Exhibit 31, is that the letter you are referring to?
>
> A. Yes.
>
> Q. And that's your signature on that letter. Right?

14

A. Yes.

* * *

Q. In any event, the idea was that he needed to -- you were going to continue to pay your portion of the health and life insurance and other benefits, but he needed during layoff to pay his part. Right?

A. That's correct.

Q. Now, as I understand it, based upon the answer that has been filed -- maybe I shouldn't say that. Let me rephrase that. Was there also some discussion with him or Maryann to the effect, look, if you can't make every payment, we are going to still go ahead and pay your premium, but when you come back to work we are going to deduct it from your paycheck?

A. Yes.

Q. Okay. And was that with Dan or Maryann, or both, do you recall?

A. Dan.

Q. Okay. And that's what Jedco did, isn't it?

A. Yes.

(*Id.* at 79-81.)  The letter referenced in this testimony was the January 27, 2010, letter instructing Mr. Teisman that he still owed life insurance premiums for the periods in which he was laid off.

Jedco provides three reasons why there was no material misrepresentation.  First, Jedco argues that ERISA does not impose a duty upon fiduciaries to communicate information about conversion options, portability options, or living benefit options.  (Dkt. No. 34, at 8.)  Second, Jedco argues that there is no fiduciary duty to disclose information in

circumstances where the fiduciary is not aware of a participant or beneficiary's status and situation (here, Mr. Teisman's serious medical condition).  (*Id.* at 9.)  Third, Jedco argues that Plaintiff is attempting to enforce an omission in the conversation between Ms. Dalrymple and Mr. Teisman – i.e. the failure of Ms. Dalrymple to discuss the other options available.  (*Id.* at 12.)

However, all three arguments misconstrue Plaintiff's claim by focusing on the fact that Ms. Dalrymple did not discuss the various options under which, if elected, Mr. Teisman could have been covered by life insurance.  But the material misrepresentation was not that Jedco failed to provide information about these options to Mr. Teisman.  It was the representation by Jedco, through Ms. Dalrymple, that Mr. Teisman *was covered* by life insurance during the entirety of the time-line in question.  Thus, whether or not Jedco had an affirmative duty to discuss such options with Mr. Teisman, is irrelevant to whether Plaintiff has shown a genuine issue of material fact as to whether the misrepresentation that Mr. Teisman was covered by life insurance while he was laid off was material.  Given the fact that Mr. Teisman and Jedco continued paying his premiums during this time, that Ms. Dalrymple directly told Mr. Teisman that he was covered by the life insurance while laid off, and that Mr. Teisman did not seek alternative forms of coverage, the Court finds that Plaintiff has shown such a genuine issue of material fact.

Defendant's three counter-arguments are more applicable to Plaintiff's contention that Ms. Dalrymple's failure to discuss the alternative coverage options was an additional

16

misrepresentation. The Court agrees with Jedco that this failure is not an independent misrepresentation. Instead, it is subsumed in the misrepresentation that Mr. Teisman was still covered by the life insurance. There is no evidence that Mr. Teisman asked about alternative coverage options or that Ms. Dalrymple indicated that alternatives were unavailable. Instead, the only evidence is that Mr. Teisman asked whether he was still covered by the insurance. While Ms. Dalrymple *should* have responded that Mr. Teisman was not covered and that there were alternative options available to him in order to answer fully and accurately, the misrepresentation was that he was covered. The failure to discuss alternative options was a collateral consequence of this misrepresentation, but not an independent misrepresentation.

### ii. Detrimental Reliance

A Plaintiff's reliance on the misrepresentation must be "reasonable." *Moore*, 458 F.3d at 433. Plaintiff has presented evidence that she and her husband wrote two checks to Jedco for the purpose of keeping Mr. Teisman's insurance in place. (Dkt. No. 35, Attach. 3, Dalrymple Dep. 84-85.) Moreover, Ms. Dalrymple testified that it was reasonable for Mr. Teisman to rely on her representations that he was covered by life insurance while laid off:

> Q. And, I guess, from everything, in your conversations with Dan, he thought his insurance was in effect, didn't he?
>
> A. Yes.
>
> Q. Did you ever talk to Maryann about it prior to his death?
>
> A. No.
>
> Q. And would you agree that, based upon the experience of his layoff in April

17

of 2009, your letter of July (sic) 27 of 2010 and, you know, all of your discussions with him, it was reasonable for him to assume that his life insurance was in effect?

A. Yes.

(*Id.* at 85.)  Given Ms. Dalrymple's expertise concerning the plans and her role as director of human resources, the Court finds that a reasonable jury could find that Mr. Teisman relied on her representations and that this reliance was reasonable.  Thus, Jedco is not entitled to summary judgment on this claim.

## C. Count IV: Promissory Estoppel

The Sixth Circuit has recognized that promissory estoppel is a viable theory in ERISA actions.  *Sprague v. Gen. Motors, Inc.*, 133 F.3d 388, 403 (6th Cir. 1998).  The elements of an estoppel claim are as follows:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.*  Defendant's argument that it is entitled to summary judgment on this count focuses on the second requirement.  "The second element requires the plaintiff to demonstrate that the defendant's actions 'contain[ed] an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud.'"  *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 443 (6th Cir. 2010) (quoting *Crosby v. Rohm & Has Co.*, 480 F.3d 423,

431 (6th Cir. 2007)).

"Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague*, 133 F.3d at 404.  The first rationale *Sprague* gave for this holding was that estoppel requires justifiable reliance (the fifth requirement) by the party asserting estoppel and that party's reliance "can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party."  *Id.* The second rationale provided was that "to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.  That would not be consistent with ERISA."  *Id.*  Nevertheless, the Sixth Circuit has held that it will not enforce *Sprague*'s prohibition in cases where "neither of the rationales invoked by *Sprague* to justify its general prohibition against application of estoppel to unambiguous provisions is sufficient to outweigh the extraordinary circumstances presented by [a] case." *Bloemker*, 605 F.3d at 443.

Defendant depends on *Sprague* to first contend that it is entitled to summary judgment because the applicable plan provisions are unambiguous.  As discussed in this Court's October 29, 2012, opinion denying Plaintiff's motion for judgment on the administrative record against United, the plan language requiring a 90-day waiting period for rehired employees was unambiguous.  (Dkt. No. 43, Op.)  However, the Court believes *Bloemker*'s extraordinary circumstances are present here.

The first rationale given by *Sprague* is inapplicable because, based on the evidence available, Mr. Teisman never had access to the plan provisions which had this unambiguous language.  According to Ms. Dalrymple's testimony, employees were not given the full General and Voluntary Policies (Dkt. No. 1, Ex. B; Dkt. No. 2, Ex. D), but were instead given certain summaries (Dkt. No. 36, Attach. 10; Dkt. No. 39, Attach. 25, at 1-6).  (Dkt. No. 35, Attach. 3, Dalrymple Dep. 43, 95-96.)  The only reference to a waiting period in those documents is the unaccompanied line: "Eligibility Waiting Period 90 days."  (Dkt. No. 39, Attach. 25, at 4.)  Plainly, that statement is ambiguous as to whether the waiting period applies when an employee returns from a layoff.

As for the second rationale, *Bloemker* found that the Sixth Circuit has "allowed enforcement of something other than the plan documents based on estoppel under appropriate circumstances."  *Bloemker*, 605 F.3d at 444.  Consequently, the Sixth Circuit created a new test to determine when a plaintiff could avoid the general prohibition of *Sprague*:

> We hold that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id.*  While the Sixth Circuit was referring in particular to pension plan provisions, it is logical that the reasoning also extends to life insurance plan provisions.  Plaintiff has shown a genuine issue of material fact in regard to all three factors.

First, Plaintiff has submitted written representations from Jedco stating that Mr. Teisman's insurance continued even during the periods of his layoffs, including a letter asking him to continue paying his premiums during the time he was laid off and a layoff notification stating that his life insurance would not terminate. (AR 170-75, 677, 785; Dkt. No. 38, Attach. 17.) The second factor refers to the first rationale. In *Bloemker*, the first rationale was found inapplicable because even though the participant had access to the unambiguous plan provisions, it was impossible for him to do an individual calculation of benefits. Here, as discussed, Mr. Teisman did not even have access to the pertinent plan provisions, so it was also impossible for him to rely on the unambiguous language in those provisions. Third, Plaintiff has created a genuine issue of material fact as to whether extraordinary circumstances existed such that the balance of equities favor the application of estoppel. Plaintiff has presented evidence that Mr. Teisman relied on the representations of Ms. Dalrymple who was Jedco's human resources manager. At least two documents sent from Jedco to Mr. Teisman indicate that he was still covered by the life insurance during his layoffs (Dkt. No. 38, Attachs. 17, 18), and Mr. Teisman was writing checks to pay for his premiums during those layoffs (AR 675-76). Plaintiff has presented evidence that Mr. Teisman had no way of knowing he was not actually covered during those time periods because Jedco never provided him with the full plan documents, which laid out the 90-day waiting period following the rehiring of a terminated employee. Moreover, it is undisputed that up until the date of his death, Jedco paid all of Mr. Teisman's premiums – with the

expectation that he would pay them back, as he was doing through the two checks he submitted – under both policies to United.  (Dkt. No. 11, Answer ¶¶ 25, 29, 33, 35, 36; Dkt. No. 35, Attach. 3, Dalrymple Dep. 90.)  Under those circumstances, a reasonable jury could find that extraordinary circumstances existed.

Consequently, if Plaintiff has created a material issue of genuine fact as to whether the second requirement of estoppel is met, she can succeed on an equitable estoppel claim despite the unambiguous language of the plan provisions.  Defendant is correct that Plaintiff has not presented evidence of intentional fraud.  Ms. Dalrymple testified that she believed that Mr. Teisman was covered by the insurance policies during his layoffs, and Ms. Teisman testified that she believed Ms. Dalrymple's testimony on this matter:

> Q. Sara testified that she thought the life insurance policies were in place. You remember that, correct?
>
> A. Yes.
>
> Q. And you believe she was telling the truth, don't you?
>
> A. Yes

(Dkt. No. 35, Attach. 1, Teisman Dep. 23.)  Plaintiff argues that she has shown intentional fraud because "[w]here a plan participant is given specific instructions on how to access plan documents, their failure to read the documents will not shield them from having actual knowledge of the documents' terms." *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010).  However, this quotation specifically refers to plan participants, not plan administrators.  The fact that Ms. Dalrymple had documents which

discussed the 90-day waiting period is not evidence that she intentionally deceived Mr. Teisman.

However, while there may not have intentional deception, there might have been gross negligence.  Plaintiff has created a genuine issue of material fact as to whether Ms. Dalrymple was grossly negligent by misrepresenting to Mr. Teisman that his life insurance was in effect when she had access to plan documents which clearly discussed the 90-day waiting period following rehiring and clearly provided that a person in Mr. Teisman's situation did not retain his insurance during a layoff. (Dkt. No. 35, Attach. 3, Dalrymple Dep. 50, 100.)  A reasonable jury could find that the fact that Ms. Dalrymple assured Mr. Teisman that his insurance continued, on multiple occasions when asked by Mr. Teisman, without ever referring to the actual provisions of the policies was grossly negligent.

Jedco does not dispute that Plaintiff has met her summary judgment burden as to the other estoppel requirements, and the Court agrees.  Thus, Jedco's motion for summary judgment on Count IV will be denied.

## IV.

Pursuant to *Cigna*, Plaintiff may recover "make-whole" monetary relief under § 1132(a)(3).  As there are genuine issues of material fact regarding Plaintiff's breach of fiduciary duties claim, as it pertains to material misrepresentations, and her promissory estoppel claim, Jedco's motion for summary judgment will be denied as to those claims.  However, Jedco's motion will be granted in part as it pertains to Plaintiff's allegation that

23

Jedco's failure to provide Mr. Teisman with summary plan descriptions was a breach of fiduciary duty entitling her to monetary relief.  Because the summary plan descriptions did not include information relevant to this action, a reasonable jury could not find that Plaintiff was prejudiced by Jedco's failure in this regard.

An order consistent with this opinion will be entered.


Dated: <u>November 8, 2012</u>                        <u>/s/ Robert Holmes Bell</u>
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE